IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DUVAL LEVONTA DORTON                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 2:14-cv-140-KS-MTP

BRANDON FREEMAN, ET AL.                                              DEFENDANTS

<u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court on the Motion for Summary Judgment [65] filed by

Defendants Brandon Freeman and Forrest County and the Motion for Summary Judgment [71]

filed by Defendant Skye Johnson.  Having considered the Motions, the record, and the applicable

law, the undersigned recommends the following: (1) that Motion for Summary Judgment [65] be

granted, (2) that Plaintiff's claims against Defendant Freeman be dismissed without prejudice,

(3) that Plaintiff's claims against Defendant Forrest County be dismissed with prejudice, (4) that

Motion for Summary Judgment [71] be granted, and (5) that Plaintiff's claims against Defendant

Johnson be dismissed with prejudice.

BACKGROUND

On August 28, 2014, Plaintiff Duval Levonta Dorton, proceeding *pro se* and *in forma*

*pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983.  Plaintiff's claims arose while he

was a pretrial detainee at the Forrest County Jail ("FCJ").[1]  In his complaint and as clarified in

his testimony at the *Spears*[2] hearing, Plaintiff asserts claims relating to the excessive use of force

---

[1] Plaintiff is currently a post-conviction inmate at Central Mississippi Correctional
Facility.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

1

against Defendants Brandon Freeman and Forrest County and asserts claims relating to the denial of adequate medical care against Defendant Skye Johnson.[3]

According to Plaintiff, on July 17, 2014, a physical altercation involving several inmates occurred at FCJ, and Defendant Brandon Freeman, a officer with the Forrest County Sheriff's Department, was assigned to investigate the altercation.  Plaintiff alleges that Defendant Freeman began questioning inmates and asked Plaintiff if he was involved in the incident earlier that day.  After Plaintiff denied any involvement, Defendant Freeman allegedly punched him in the jaw without provocation, knocking him to the floor.  Plaintiff alleges that the fall aggravated existing injuries to his shoulder and back.

In addition to his shoulder and back injuries, Plaintiff allegedly suffered mental anguish and loss of sleep following the altercation with Defendant Freeman.  Plaintiff alleges that after the altercation, he had to file multiple grievances and sick calls before Defendant Nurse Skye Johnson examined him.  Plaintiff alleges that he was not examined until approximately one week after the altercation.  Defendant Johnson allegedly gave him Tylenol for his pain but declined to treat him for his mental anguish and loss of sleep.

According to Plaintiff, shortly after Defendant Johnson's examination, he was sent to Forrest General Hospital, where a doctor informed him that his shoulder was injured, which might cause chronic pain.  Plaintiff alleges that the doctor did not prescribe him medication for his mental issues or sleep loss, but he also states that he did not specifically ask for that type of

---

[3] On November 19, 2014, the Court allowed Plaintiff to add Officer Fairley and Ms. Michelle as defendants. *See* Order [16].  However, on December 2, 2014, the Court dismissed Plaintiff's claims against these defendants for failure to state a claim against them upon which relief could be granted. *See* Order [19].

medication because he was in pain.  Approximately three weeks after the altercation, Plaintiff

was allegedly sent to an orthopedist and radiographs of his shoulder were taken.  Plaintiff alleges

that the orthopedist confirmed that Plaintiff had injured his shoulder and recommended that

Plaintiff perform certain exercises and reduce strain on his shoulders.

Finally, Plaintiff alleges that he filed multiple grievances regarding Defendant Freeman's

excessive use of force, but Defendant Forrest County never took action.  According to Plaintiff,

Defendant Freeman continued to work at FCJ and there were no indications that Plaintiff's

excessive force claim was being addressed.

As relief, Plaintiff seeks monetary damages.  On July 1, 2015, Defendants Freeman and

Forrest County filed their Motion for Summary Judgment [65].  On July 30, 2015, Defendant

Johnson filed her Motion for Summary Judgment [71].  On January 15, 2016, the Court directed

Plaintiff to respond to the Motions for Summary Judgment on or before January 25, 2016. *See*

Order [77].  Plaintiff has not filed a response, and the time for doing so has expired.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that

there is 'no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th

Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The

Court must view "the evidence in the light most favorable to the nonmoving party." *Id.*

However, the nonmoving party "cannot defeat summary judgment with conclusory allegations,

unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson

Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d

1069, 1075 (5th Cir. 1994)).  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

### *Defendant Brandon Freeman*

In his Motion for Summary Judgment [65], Defendant Freeman asserts that the record does not support Plaintiff's excessive force claim.  Defendant Freeman also asserts that Plaintiff failed to exhaust his administrative remedies.  As exhaustion is a threshold issue, the Court will consider it at the outset.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983. "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  The Fifth Circuit held that "[s]ince exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272.  Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Id*. at 266.

The Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement. *Johnson v. Ford*, 261 Fed. App'x 752, 755 (5th Cir. 2008) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)).  A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because

4

"proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The record demonstrates that a specific grievance policy was in place at FCJ. (Grievance Policy [65-11].)  Pursuant to FCJ's grievance policy, an inmate is required to submit his grievance in writing to the shift commander on duty. *Id*.  Thereafter, an inmate is given notice of a hearing with the sheriff or chief of corrections unless resolution is possible without a hearing. *Id*.

In support of his Motion, Defendant Freeman submitted a grievance filed by Plaintiff on November 11, 2014. (Grievance [65-10].)  According to Freeman, the November 11, 2014, grievance is the only grievance filed by Plaintiff regarding excessive force or inadequate medical care.  Plaintiff has not responded to the Motion for Summary Judgment [65] or offered any evidence contradicting his grievance record.[4]  Thus, the record before the Court demonstrates that Plaintiff did not submit a grievance until November 11, 2014–more than two months *after* he filed the instant action.  The United States Court of Appeal for the Fifth Circuit has clearly held that exhausting claims after a prisoner files suit in federal court is "irrelevant," and the "pre-filing exhaustion is mandatory." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

_____

[4] Although Plaintiff testified at the *Spears* hearing that he filed multiple grievances, these bare, unsubstantiated allegations simply are not enough to withstand a properly supported motion for summary judgment. *Ryan v. Phillips*, 558 Fed. App'x. 477, 478 (5th Cir. 2014) (inmate's "conclusory and unsubstantiated assertion that he initiated the applicable grievance procedure is insufficient to refute the lack of evidence that he filed any informal or formal grievances.").

Although Plaintiff may have attempted to exhaust his claims during the pendency of the instant action, his failure to exhaust *prior* to filing suit requires dismissal of his claims against Defendant Freeman. Defendant Freeman is entitled to judgment as a matter of law, and Plaintiff's claims against him should be dismissed without prejudice.

### Defendant Forrest County

As previously discussed, Plaintiff's claim against Defendant Forrest County is based on his allegation that the County failed to take appropriate action in response to his grievance against Defendant Freeman. This claim fails as a matter of law. Failure to adequately investigate or respond to a grievance falls short of a constitutional violation. *Dehghani v. Vogelgesang*, 226 Fed. App'x. 404, 406 (5th Cir. 2007) (holding that plaintiff's allegation that warden failed to adequately investigate his grievance did not amount to a constitutional violation); *Charles v. nance*, 186 Fed. App'x. 494, 495 (5th Cir. 2006); *Woodland v. City of Vicksburg*, 2006 WL 3375256, at *3 (S.D. Miss. Nov. 21, 2006); *Duckworth v. Hutchins State Jail*, 2009 WL 812217, at *2 (N.D. Tex. March 26, 2009). Plaintiff has no due process liberty interest in having his grievance resolved to his satisfaction. *See Geiger v. Jower*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007). Thus, Forrest County is entitled to judgment as a matter of law, and Plaintiff's claim against Forrest County should be dismissed with prejudice.

### Defendant Skye Johnson

Plaintiff's allegations against Defendant Johnson amount to claims against her for the denial of adequate medical care. The Eighth Amendment's prohibition of cruel and unusual punishment affords convicted inmates constitutional rights in connection with their medical care

6

and safety. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  However, a pretrial detainee's

right to medical care arises from the Fourteenth Amendment's guarantee of due process. *See*

*Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003).  The Fifth Circuit "has recognized

that there is no significant distinction between pretrial detainees and convicted inmates

concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548

(5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996)).  "When the

alleged unconstitutional conduct involves an episodic act or omission,[5] the question is whether

the state official acted with deliberate indifference to the inmate's constitutional rights,

regardless of whether the individual is a pretrial detainee or state inmate" *Gibbs*, 254 F.3d at

548.

Deliberate indifference "is an extremely high standard to meet."  *Gobert v. Caldwell*, 463

F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752,

756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective

recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A

plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively

intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive

---

[5] In an "episodic act or omission" claim, an official is usually interposed between the
inmate and the governmental entity, such that the prisoner first complains of a particular act or
omission of the official and secondarily to a policy, custom, or procedure that caused or allowed
the act or omission. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).  Conversely, a "conditions
of confinement" action focuses upon allegedly unconstitutional "conditions, practices, rules, or
restrictions of . . . confinement." *Hare*, 74 F.3d at 644.  Plaintiffs' deprivation of medical care
allegations in this case fall into the former category since they center upon the purported acts or
omissions of Defendant Johnson.

risk to inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists and he must also draw the

inference." *Id.* at 838.  Plaintiff must "submit evidence that prison officials 'refused to treat him,

ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar

conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*

*v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 965 (5th Cir. 2004) (quoting *Domino*,

239 F.3d at 756).  Delay in medical care only violates the constitution if there has been

deliberate indifference, which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191,

195 (5th Cir. 1993).

      Negligent conduct by prison officials does not rise to the level of a constitutional

violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  Plaintiff is not entitled to the "best"

medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*,

2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).  Further, a prisoner's "disagreement with

medical treatment does not state a claim for Eighth Amendment indifference to medical needs."

*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

      As previously mentioned, Plaintiff alleges that he was injured during an altercation with

Defendant Freeman on July 17, 2014.  Plaintiff's medical records demonstrate that on July 31,

2014, Plaintiff submitted a sick call stating that two days prior he fell down the stairs, injuring

his back and shoulder.  That same day, the treating nurse provided Plaintiff ibuprofen. (Medical

Records [71-4] at 5.)  On August 9, 2014, Plaintiff submitted a sick call regarding a "back

injury," and two days later he was treated by a nurse and referred to a doctor, who prescribed

him an NSAID pain medication and ordered radiographs of his cervical spine and shoulder. ([71-

4] at 6-7.)[6]

On August 13, 2014, Plaintiff was taken to Forrest General Hospital for radiographs of

his cervical spine and right shoulder.  The radiographs of Plaintiff's cervical spine were normal.

The radiographs of Plaintiff's shoulder revealed that:

> The bones appear in normal alignment with no fracture or dislocation.  The soft
> tissues appear normal.  However, the humeral head is slightly subluxed likely due
> to chronic rotator cuff injury and/or ligamentous laxity.  As a result there are mild
> glenohumeral degenerative changes.

(Radiology Reports [71-11].)

On August 22, 2013, Plaintiff submitted a sick call complaining about pain in his back

and shoulder and complaining that he was unable to sleep. ([71-4] at 8.)  Defendant Johnson

provided Plaintiff Tylenol and referred him to a doctor to review the results of his radiographs.

(71-4] at 8.)  According to Defendant Johnson's sworn testimony, she had no authority to

prescribe Plaintiff a sleep aid. (Johnson Affidavit [71-10].)

On September 3, 2014, Plaintiff was taken to Premier Orthopedic & Sports Medicine for

additional radiographs of his shoulder. (Medical Records [71-13].)  The radiographs revealed no

acute changes. (Radiology Report [65-7] at 2.)  On September 8, 2014, Plaintiff was examined

after he complained of acne and "muscle pain" in his back and shoulders. ([71-4] at 11.)  On

September 20, 2014, a nurse noted that Plaintiff had refused his NSAID pain medication "17 out

of 22 days this month." ([71-4] at 12.)  On September 26, 2014, Plaintiff again complained of

pain in his back and shoulder and sleeplessness. ([71-4] at 13.)

On September 30, 2014, a doctor examined Plaintiff.  The doctor noted that Plaintiff

---

[6] Plaintiff first mentions an alleged assault in the August 9, 2014, sick call.

declined his NSAID pain medication and noted that he had not been compliant with his

medication.  The doctor prescribed him Tylenol. ([71-4] at 14.)  Also on September 30, 2014,

Plaintiff was again taken to Forrest General Hospital for radiographs of his lumbar spine.  The

radiographs revealed "nothing acute" and were "unremarkable." (Radiology Reports [71-12].)

On November 4, 2014, Defendant Johnson examined Plaintiff for a second time, and she

provided Plaintiff Tylenol and recommended that he rest and perform light exercise. ([71-4] at

17.)  On November 25, 2014, a doctor noted that the orthopedic specialist "did not recommend

medication, only right shoulder exercises."  The doctor prescribed Plaintiff an NSAID pain

medication. ([71-4] at 18.)  On December 4, 2014, Defendant Johnson noted that Plaintiff was

playing football and was under no acute distress. ([71-4] at 27.)

On December 5, 2014, Plaintiff complained about sleeplessness but refused to be seen by

a medical professional. ([71-4] at 19.)  On December 19, 2014, Plaintiff submitted a sick call

complaining about anxiety, which started after the alleged altercation with Defendant Freeman.

The treating nurse indicated that she would refer Plaintiff to Pine Belt Mental Health. ([71-4] at

20.)  However, on December 22, 2014, Plaintiff was transferred to another correctional facility.

Plaintiff's claims are based on his allegations that Defendant Johnson delayed treating

him for a week after his alleged altercation with Defendant Freeman on July 17, 2014, and

refused to treat his mental anguish and sleeplessness.  In order to succeed on his claims, Plaintiff

must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *See*

*Davidson*, 91 Fed. App'x. at 964.  Plaintiff has failed to make this showing.  Based on the

evidence before the Court, Plaintiff did not complain about pain in his back and shoulder until

July 31, 2014, when he submitted a sick call stating that two days prior he fell down stairs. ([71-

4] at 5.)  Thereafter, Defendant Johnson never refused to treat Plaintiff, ignored his complains, or denied him medical treatment.  To the contrary, Defendant Johnson and other medical professionals at FCJ promptly assessed Plaintiff, consistently treated him, scheduled him multiple appointments with outside medical providers, and provided him multiple medications. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmates' allegations of deliberate indifference.").[7]

Regarding Plaintiff's allegation that Defendant Johnson refused to treat his sleeplessness, Plaintiff's medical records and Defendant Johnson's sworn testimony establish that, as a nurse, Defendant Johnson was unable to prescribe a sleep aid, but she did provide Plaintiff pain relievers and refer him to a doctor.  (71-4] at 8; [71-10].)  As for Plaintiff's allegations regarding mental anguish, the record demonstrates that he first complained about anxiety on December 19, 2014, and the treating nurse determined that he should be referred to a mental health facility. ([71-4] at 20.)  Thus, Plaintiff has failed to establish that Defendant Johnson refused to treat any of his medical conditions.

Additionally, Plaintiff has failed to identify any serious medical condition he faced or any resulting substantial harm. *See Troia v. Bedwell*, 2006 WL 1968913, at *8 (E.D. La. May 15, 2006) (finding that a plaintiff's "testimony about his anxiety attacks and his shoulder and back problems did not identify any serious risk of harm or any actual harm resulting from the alleged delays in treatment [and did not] rise to the level of serious medical needs for purposes of

---

[7] Medical professionals also treated Plaintiff for lacerations on his feet, gastroephageal reflux disease, a risen, and other alleged ailments.

11

constitutional analysis."); *Collins v. LeBlanc*, 2012 WL 528172, at *4 (M.D. La. Jan. 19, 2012) (finding that, as a general proposition, loss of sleep does not constitute a condition serious enough to support a deliberate indifference claim); *Hood v. Montgomery County Tex.*, 2013 WL 4875051, at *13 (S.D. Tex. Sept. 11, 2013) (finding that a plaintiff's withdrawal symptoms, which included extreme anxiety and panic attacks, were not the kind of substantial harm that rises to the level of a constitutional violation); *Smith v. Crose*, 2006 WL 2591075, at *5 (D.N.J. Sept. 8, 2006) (finding that a plaintiff's "reduced ability to fall asleep does not amount to a serious medical need.")

Plaintiff disagrees with the course of treatment provided to him as FCJ, but "[d]isagreement with medical treatment does not state a claim for . . . indifference to medical needs." *Norton*, 122 F.3d at 292.  Even if Defendant Johnson were negligent in her treatment of Plaintiff, such does not rise to the level of a constitutional violation. *See See Daniels*, 474 U.S. at 333-34; *McMahon*, 583 F.2d at 174; and *Davidson*, 91 Fed. App'x at 965 (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)).  The record does not support a finding that Defendant Johnson was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Plaintiff's claims against Defendant Johnson should be dismissed.

### CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned recommends that:

1.     The Motion for Summary Judgment [65] be GRANTED,

2.     The Motion for Summary Judgment [71] be GRANTED,

3.     This action be dismissed, and

4.     That the dismissal be ***without*** prejudice as to Plaintiff's claims against Defendant Brandon Freeman and ***with*** prejudice as to Plaintiff's claims against Defendants

12

Forrest County and Skye Johnson.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 5th day of February, 2016.

s/ Michael T. Parker
United States Magistrate Judge

13